

## DECISION

Constellation Brands, Inc. and its wholly owned subsidiary Ruffino SRL v. Stanley Pace
Claim Number: FA1706001735061

## PARTIES

Complainant is **Constellation Brands, Inc. and its wholly owned subsidiary Ruffino SRL** ("Complainant"), represented by **John M. Rannells** of **Baker and Rannells PA**, New Jersey, USA.  Respondent is **Stanley Pace** ("Respondent"), represented by **Howard Neu** of **Law Office of Howard Neu, P.A.**, Florida, USA.

## REGISTRAR AND DISPUTED DOMAIN NAME

The domain name at issue is <rufino.com>, registered with **Fabulous.com Pty Ltd.**

## PANEL

The undersigned certify that they have acted independently and impartially and to the best of their knowledge have no known conflict in serving as Panelists in this proceeding.

Hon. Karl V. Fink (Ret). (Chair); Sandra J. Franklin and Houston Putnam Lowry, Chartered Arbitrator, as Panelists.

## PROCEDURAL HISTORY

Complainant submitted a Complaint to the FORUM electronically on June 8, 2017; the FORUM received payment on June 8, 2017.

1

**Exhibit 2**

On June 12, 2017, Fabulous.com Pty Ltd confirmed by e-mail to the FORUM that the <rufino.com> domain name is registered with Fabulous.com Pty Ltd and that Respondent is the current registrant of the name.   Fabulous.com Pty Ltd has verified that Respondent is bound by the Fabulous.com Pty Ltd registration agreement and has thereby agreed to resolve domain disputes brought by third parties in accordance with ICANN's Uniform Domain Name Dispute Resolution Policy (the "Policy").

On June 13, 2017, the FORUM served the Complaint and all Annexes, including a Written Notice of the Complaint, setting a deadline of July 3, 2017 by which Respondent could file a Response to the Complaint, via e-mail to all entities and persons listed on Respondent's registration as technical, administrative, and billing contacts, and to postmaster@rufino.com.   Also on June 13, 2017, the Written Notice of the Complaint, notifying Respondent of the e-mail addresses served and the deadline for a Response, was transmitted to Respondent via post and fax, to all entities and persons listed on Respondent's registration as technical, administrative and billing contacts.

A timely Response was received and determined to be complete on July 3, 2017.

Complainant's timely additional submission was received July 7, 2017.

On July 7, 2017, pursuant to Complainant's request to have the dispute decided by a three-member Panel, the Forum appointed Hon. Karl V. Fink (Ret). (Chair), and Sandra J. Franklin and Houston Putnam Lowry, Chartered Arbitrator, as Panelists.

Respondent's timely additional submission was received July 11, 2017.

All submissions were considered by the Panel.

Having reviewed the communications records, the Administrative Panel (the "Panel") finds that the FORUM has discharged its responsibility under Paragraph 2(a) of the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules") "to employ reasonably available means calculated to achieve actual notice to Respondent" through submission of Electronic and Written Notices, as defined in Rule 1 and Rule 2.

## RELIEF SOUGHT

Complainant requests that the domain name be transferred from Respondent to Complainant.

## PARTIES' CONTENTIONS

A. Complainant

Complainant, an Italian winery founded in 1877, is one of the most recognizable wine brands in the United States and sells products in restaurants, liquor stores, bars, grocery stores and online across 85 countries. Complainant registered its RUFFINO mark with the United States Patent and Trademark Office ("USPTO") (Reg. No. 537,668, registered Feb. 13, 1951), and has rights in the mark under Policy ¶4(a)(i). Respondent's <rufino.com> domain name is confusingly similar to Complainant's mark because it is merely a misspelling of Complainant's mark appended with the generic top-level domain ("gTLD") ".com".

Respondent has no rights or legitimate interests in the disputed domain name. Complainant has not licensed or authorized Respondent to use its RUFFINO mark in any fashion, and Respondent is not known by the disputed domain name. Respondent uses the resolving website to park advertisements and generates income through a parking service utilized on the site. Respondent's

parking, use of typosquatting and general offers to sell the domain name to the public are also considered evidence of Respondent's lack of rights and legitimate interests in the <rufino.com> domain name. Respondent also fails to make an active use of the disputed domain name by allowing the website to be controlled by a parking site. Such use cannot be construed as a *bona fide* offering of goods or services or a legitimate noncommercial or fair use under Policy ¶¶4(c)(i) and (iii).

Respondent has registered and is using the <rufino.com> domain name in bad faith. Respondent's offers to sell the domain name and pattern of previous bad faith registrations in past UDRP cases are evidence of bad faith per Policy ¶ 4(b)(i) and (ii). Respondent attempts to disrupt the business of Complainant — under Policy ¶4(b)(iii)—by hosting pay-per-click links that compete with Complainant's business. Respondent is also attempting to attract Internet traffic and commercially benefit from the goodwill of the RUFFINO mark by creating confusion as to the source, sponsorship, affiliation, or endorsement of its website. Respondent's actual knowledge of Complainant's rights in the RUFFINO mark as well as Respondent's use of typosquatting is further evidence of bad faith.

## B. Respondent
Respondent registered the disputed domain name on August 5, 2012.

Complainant does not have rights to the RUFFINO mark because Complainant does not have a valid USPTO registration.

Respondent has a legitimate interest in the <rufino.com> domain name because the term "RUFINO" is a common Italian surname and Complainant cannot have an absolute right and interest in a generic term such as a surname. Further,

4

Respondent is a generic domain name reseller, specifically in the market of surnames. Reselling domain names is a legitimate business practice and is evidence of Respondent's rights and legitimate interests in the disputed domain name.

Respondent has not acted in bad faith because the disputed domain name is simply a generic term. Further, Respondent registered its <rufino.com> prior to Complainant's registration of its <ruffino.com> and Respondent has been involved in recent UDRP cases where Respondent was not ordered to transfer a disputed domain name.

C. Additional Submission- Complainant
Respondent refers to Complainant's U.S. registration as a "typed drawing," implying that this is not the equivalent of a trademark. The term "typed drawing" refers to the "mark drawing code" and is the equivalent of "standard character drawing."

As evidenced by the U.S. Census Bureau (2010 Census) there are only 795 individuals with the surname "Rufino" in the U.S. making its surname usage *de minimus*.

Respondent states that he has accumulated over 10,000 surnames- A Reverse Look-up on Domain Tools lists Respondent as having 10,736 domains.  A review on Domain Tools calls the surname claim into question.

The fact that there are no third party registrations in the U.S. for RUFFINO for any goods or services is evidence of the strength of Complainant's mark.

5

Respondent states that a "Google search for RUFINO shows the WIKIPEDIA definition as a family name"." Respondent conveniently fails to point out that definition also states: "See also • Ruffino, a wine producer based in the Tuscany region of Italy."

Respondent makes an argument concerning Complainant's domain that is misleading. Complainant Ruffino SRL owned the domain ruffino.com and maintained a continuous website at said domain at least as early as 1998. The domain was transferred to Complainant Constellation Brands, Inc. ("CBI") in 2012.

Respondent's cited no-transfer cases are distinguishable.

Based upon all the evidence of record, the Panel may presume that the purpose of Respondent's domain is to attract users to Respondent's website under the mistaken impression that they would be landing on Complaint's website.

D. Additional Submission- Respondent
Forebears is a global surname data aggregator, which shows 90,775 people with the surname Rufino, and 8,251 people with the surname Ruffino.

Additionally Rufino is a city in Argentina.

The majority of Respondent's domains are under WHOIS privacy to reduce spam, phishing, and frivolous offers to purchase domains. Respondent presently has in excess of 60,000 domains registered either under his own name or under Privacy.

Respondent has demonstrated a legitimate business interest in surname domains, including "Rufino", to the extent that in at least 3 of the cases cited, he sued and maintained control of the generic domain name.

Complainant has failed to produce any evidence that there is any confusion created by users mistakenly going to Rufino.com for the purchase of Ruffino wine.

## FINDINGS

(1)     the domain name registered by Respondent is identical or confusingly similar to a trademark or service mark in which Complainant has rights; and

(2)     Respondent has no rights or legitimate interests in respect of the domain name; and

(3)     the domain name has been registered and is being used in bad faith.

## DISCUSSION

Paragraph 15(a) of the Rules instructs this Panel to "decide a complaint on the basis of the statements and documents submitted in accordance with the Policy, these Rules and any rules and principles of law that it deems applicable."

Paragraph 4(a) of the Policy requires that Complainant must prove each of the following three elements to obtain an order that a domain name should be cancelled or transferred:

(1)     the domain name registered by Respondent is identical or confusingly similar to a trademark or service mark in which Complainant has rights; and

(2)     Respondent has no rights or legitimate interests in respect of the domain name; and

(3)    the domain name has been registered and is being used in bad faith.

## Identical and/or Confusingly Similar

Complainant contends it registered its RUFFINO mark with the USPTO (Reg. No. 537,668, registered Feb. 13, 1951), and has rights in the mark under Policy ¶4(a)(i). Registration with the USPTO confers rights in a mark per Policy ¶4(a)(i). *See* T-Mobile USA, Inc. dba MetroPCS v. Ryan G Foo / PPA Media Services, FA 1627542 (FORUM Aug. 9, 2015) (finding that Complainant has rights in the METROPCS mark through its registration with the United States Patent and Trademark Office). Thus, the Panel finds that Complainant has rights in the RUFFINO mark under Policy ¶4(a)(i).

Complainant asserts Respondent incorrectly alleges that Complainant does not possess a trademark for RUFFINO. The Panel notes that a search on the USPTO website provides conclusive evidence on this issue in Complainant's favor. Even without the valid USPTO registration, Complainant would still have common law rights in the RUFFINO mark because Complainant has used the mark for nearly 150 years and has garnered a considerable secondary meaning in the mark through its international success and longevity in the wine business.

Respondent's <rufino.com> mark is confusingly similar to Complainant's mark because it is merely a misspelling of Complainant's mark appended with the gTLD ".com". The addition of a gTLD to a misspelled version of a mark is not considered sufficiently distinguishing to negate confusing similarity. *See Bank of America Corporation v. Above.com Domain Privacy*, FA 1629452 (FORUM Aug. 18, 2015) (finding that the <blankofamerica.com> domain name contains the entire BANK OF AMERICA mark and merely adds the gTLD '.com' and the letter 'l' to create a common misspelling of the word 'bank.'). Therefore, the Panel

holds that Respondent's <rufino.com> domain name is confusingly similar to Complainant's mark.

While Respondent contends that the <rufino.com> domain name is comprised of a common and generic term and as such cannot be found to be identical or confusingly similar to Complainant's mark, the Panel finds that such a determination is not necessary under Policy ¶4(a)(i) as this portion of the Policy considers only whether Complainant has rights in the mark and whether the disputed domain name is identical or confusingly similar to Complainant's mark. *See Precious Puppies of Florida, Inc. v. kc,* FA 1028247 (FORUM Aug. 10, 2007) (examining Respondent's generic terms arguments only under Policy ¶4(a)(ii) and Policy ¶4(a)(iii) and not under Policy ¶4(a)(i); *see also Vitello v. Castello*, FA 159460 (FORUM July 1, 2003) (finding that the respondent's disputed domain name was identical to complainant's mark under Policy ¶4(a)(i), but later determining the issue of whether the disputed domain name was comprised of generic terms under Policy ¶¶4(a)(ii) and 4(a)(iii)).

Complainant has proved this element.

## Rights or Legitimate Interests

Complainant must first make a *prima facie* case that Respondent lacks rights and legitimate interests in the disputed domain name under Policy ¶4(a)(ii), and then the burden shifts to Respondent to show it does have rights or legitimate interests. *See Hanna-Barbera Prods., Inc. v. Entm't Commentaries*, FA 741828 (FORUM Aug. 18, 2006) (holding that the complainant must first make a *prima facie* case that the respondent lacks rights and legitimate interests in the disputed domain name under UDRP ¶4(a)(ii) before the burden shifts to the respondent to show that it does have rights or legitimate interests in a domain name); *see also AOL LLC v. Gerberg,* FA 780200 (FORUM Sept. 25, 2006)

9

("Complainant must first make a prima facie showing that Respondent does not have rights or legitimate interest in the subject domain names, which burden is light.  If Complainant satisfies its burden, then the burden shifts to Respondent to show that it does have rights or legitimate interests in the subject domain name").

Complainant asserts that Respondent has no rights or legitimate interests in the disputed domain name. Complainant claims it has not licensed or otherwise authorized Respondent to use its RUFFINO mark in any fashion. A lack of contradicting evidence in the record that a respondent was authorized to use a complainant's mark in a domain name can be evidence of a lack of rights and legitimate interests. *See Navistar International Corporation v. N Rahmany*, FA1505001620789 (FORUM June 8, 2015) (finding that the respondent was not commonly known by the disputed domain name where the complainant had never authorized the respondent to incorporate its NAVISTAR mark in any domain name registration). Additionally, WHOIS information can be used to support a finding under Policy ¶4(c)(ii) that a respondent is not commonly known by a disputed domain name. *See Chevron Intellectual Property LLC v. Fred Wallace*, FA1506001626022 (FORUM July 27, 2015) (finding that the respondent was not commonly known by the <chevron-europe.com> domain name under Policy ¶4(c)(ii), as the WHOIS information named "Fred Wallace" as registrant of the disputed domain name). The <rufino.com> WHOIS information lists "STANLEY PACE" as the registrant. Therefore, the Panel holds Respondent is not commonly known as <rufino.com>.

Complainant asserts that the parked <rufino.com> resolving website is evidence that Respondent lacks rights and legitimate interests in the mark. Parking a website continuously is considered a passive use under the policy and is evidence of a lack of legitimate interests in the domain name. *See Herbalife Int'l, Inc. v. Farmana*, D2005-0765 (WIPO Oct. 3, 2005) (parking of the domain name

for many years constitutes no more than a passive use or de facto activity, which activity can reinforce a finding of no legitimate interest). Here, Respondent admits that it has "continuously parked the domain name <rufino.com> with a reputable aggregator, <sedo.com>, which puts links up to related referenced sites. It is a parked page with links, as on all parked pages, to various other websites." Complainant has provided screenshots of the <rufino.com> resolving website which displays hyperlinks such as "Wine.com," "Facebook Video App," and "A Forex". Furthermore, the website displays a notice that the webpage was "generated by the domain owner using Sedo Domain Parking." Therefore, the Panel agrees that Respondent lacks a legitimate interest in the disputed domain name.

Next, Complainant argues that Respondent has not made any *bona fide* offering of goods or services or any legitimate noncommercial or fair use of the disputed domain name because Respondent has failed to make an active use of the resolving website. As stated above, a parked website constitutes passive use of a domain name. *Herbalife Int'l, Inc. v. Farmana*, D2005-0765 (WIPO Oct. 3, 2005). Such use cannot be construed as a *bona fide* offering of goods or services or legitimate noncommercial or fair use. *See Bloomberg L.P. v. SC Media Servs. & Info. SRL*, FA 296583 (FORUM Sept. 2, 2004) ("Respondent is wholly appropriating Complainant's mark and is not using the <bloomberg.ro> domain name in connection with an active website.  The Panel finds that the [failure to make an active use] of a domain name that is identical to Complainant's mark is not a *bona fide* offering of goods or services pursuant to Policy ¶4(c)(i) and it is not a legitimate noncommercial or fair use of the domain name pursuant to Policy  ¶4(c)(iii).").  Complainant has provided a screenshot of Respondent's inactive, parked webpage. The Panel agrees that this evidence supports a finding that Respondent has not made a *bona fide* offering of goods or

services or legitimate noncommercial or fair use of the disputed domain name under Policy ¶¶4(c)(i) or (iii).

Furthermore, the resolving website displays pay-per-click links to Complainant's competitors and unrelated third parties which is further evidence that the site is not being used in connection with any *bona fide* offering of goods or services or any legitimate noncommercial or fair use. *See Vance Int'l, Inc. v. Abend*, FA 970871 (FORUM June 8, 2007) (concluding that the operation of a pay-per-click website at a confusingly similar domain name does not represent a *bona fide* offering of goods or services or a legitimate noncommercial or fair use, regardless of whether or not the links resolve to competing or unrelated websites or if the respondent is itself commercially profiting from the click-through fees).

Additionally, the <rufino.com> website displays a message that the domain name may be for sale by its owner and entices Internet users to "BUY THIS DOMAIN". Parked websites displaying messages that a domain name is for sale is evidence that a respondent lacks rights and legitimate interests in the name. *See Twentieth Century Fox Film Corporation v. Diego Ossa*, FA1501001602016 (FORUM Feb. 26, 2015) ("The Resolving parked page advertises the sale of the domain name with the message 'Would you like to buy this domain?'  The Panel accepts this offer as demonstrative of Respondent's willingness to sell the disputed domain name, and finds that such behavior provides additional evidence that Respondent lacks rights or legitimate interests in the disputed domain name.").

The Panel notes that Respondent's <rufino.com> is a typosquatted version of Complainant's RUFFINO mark. Typosquatting is the practice of taking advantage of Internet users' misspellings or typographical errors and is evidence that a respondent lacks rights and legitimate interests in a domain name. *See indyMac*

*Bank F.S.B. v. Ebeyer*, FA 175292 (FORUM Sept. 19, 2003) (finding that the respondent lacked rights and legitimate interests in the disputed domain names because it "engaged in the practice of typosquatting by taking advantage of Internet users who attempt to access Complainant's <indymac.com> website but mistakenly misspell Complainant's mark by typing the letter 'x' instead of the letter 'c'"). Here, <rufino.com> is a simple misspelling of Complainant's RUFFINO mark and <ruffino.com> website because it only differs by the addition of another letter "F". The Panel holds that Respondent has engaged in typosquatting and finds Respondent lacks rights and interests in <rufino.com>.

Complainant has proved this element.

Registration and Use in Bad Faith

Complainant contends that Respondent has engaged in bad faith registration and use by making a general offer to sell the disputed domain name to the public. *See Staples, Inc. v. lin yanxiao*, FA1505001617686 (FORUM June 4, 2015) ("Respondent's offering to sell the disputed domain name to a third party (in this case, the general public) supports a finding of bad faith registration and use."); *see also Gen. Elec. Co. v. FORDDIRECT.COM, INC.*, D2000-0394 (WIPO June 22, 2000) (finding that the respondent registered and used the domain name in bad faith by using the domain name to direct users to a general site offering the domain name for sale). Both Respondent and Complainant provide screenshots of the disputed domain name's resolving website which displays the message "The domain ruffino.com may be for sale by its owner". This Panel holds that this is evidence that Respondent has engaged in bad faith registration and use under Policy ¶4(b)(i).

Complainant asserts that Respondent has registered and is using the <rufino.com> domain name in bad faith under Policy ¶4(b)(iv) by attempting to

13

attract Internet traffic and commercially benefit from the goodwill of the RUFFINO mark. Use of a disputed domain name to create confusion as to the source, sponsorship, affiliation or endorsement of the content therein constitutes bad faith under Policy ¶4(b)(iv). *See Tumblr, Inc. v. Ailing Liu*, FA1402001543807 (FORUM Mar. 24, 2014) ("Bad faith use and registration exists under Policy ¶ 4(b)(iv) where a respondent uses a confusingly similar domain name to resolve to a website featuring links and advertisements unrelated to complainant's business and respondent is likely collecting fees."). Respondent is parking the disputed domain name for the purpose of generating income from pay-per-click links. Respondent admits to using an aggregator <sedo.com> which is a service that generates advertisements/hyperlinks for parked websites. Pursuant to Policy ¶4(b)(iv), bad faith may not be negated simply by the use of a third party aggregator or a respondent's failure to generate revenue from the parked website. *See Express Scripts, Inc. v. Windgather Invs. Ltd.*, D2007-0267 (WIPO Apr. 26, 2007) (finding that it makes no difference that a respondent contends that the advertisements in this case were "generated by the parking company," the respondent still registered and used the disputed domain name in bad faith); *see also Baylor Univ. v. Red Hot Web Gems, Inc.*, FA 1082178 (FORUM Dec. 3, 2007) (finding that, even though a respondent does not receive any revenue from the hyperlinks displayed on the website and that the revenues are received by the parking service, a respondent still registered and used the domain name in bad faith because a respondent still allowed the parking service to access the domain name, instead of resolving the webpage to a blank page). Therefore, the Panel concludes that Respondent attempted to attract Internet traffic and commercially benefit from the goodwill of Complainant's mark, and therefore, registered and used the domain name in bad faith under Policy ¶4(b)(iv).

Complainant also contends that in light of the fame and notoriety of Complainant's RUFFINO mark, it is inconceivable that Respondent could have

registered the <rufino.com> domain name without actual knowledge of Complainant's rights in the mark. Actual knowledge of a complainant's rights in the mark prior to registering the disputed domain name is adequate evidence of bad faith under Policy ¶4(a)(iii). *See Univision Comm'cns Inc. v. Norte*, FA 1000079 (FORUM Aug. 16, 2007) (rejecting the respondent's contention that it did not register the disputed domain name in bad faith since the panel found that the respondent had knowledge of the complainant's rights in the UNIVISION mark when registering the disputed domain name). A respondent has actual knowledge of a complainant's rights in a mark when a complainant's mark is famous. *See Victoria's Secret Stores Brand Mgmt., Inc. v. Michael Bach*, FA 1426668 (FORUM March 2, 2012) ("Although Complainant has not submitted evidence indicating actual knowledge by Respondent of its rights in the trademark, the Panel finds that, due to the fame of Complainant's [VICTORIA'S SECRET] mark, Respondent had actual notice at the time of the domain name registration and therefore registered the domain name in bad faith under Policy ¶4(a)(iii)."). Here, Complainant's RUFFINO mark has created significant good will and consumer recognition around the world and has been in use by Complainant since 1877 in Italy and 1933 in the United States. Complainant is also ranked as the twelfth largest brand by dollar sales in the U.S. market for still table wines. Furthermore, Complainant's RUFFINO wines are sold in over 85 countries covering 5 continents. Therefore, due to the fame of Complainant's mark, the Panel finds that Respondent had actual knowledge of Complainant's rights when <rufino.com> was registered and subsequently used.

The Panel also notes that Respondent's use of typosquatting is evidence of bad faith. *See Zone Labs, Inc. v. Zuccarini*, FA 190613 (FORUM Oct. 15, 2003) ("Respondent's registration and use of [the <zonelarm.com> domain name] that capitalizes on the typographical error of an Internet user is considered typosquatting. Typosquatting, itself is evidence of bad faith registration and use

pursuant to Policy ¶4(a)(iii)."). Here, Respondent removed one letter "f" from Complainant's mark. The Panel holds that Respondent has acted in bad faith under Policy ¶4(a)(iii) as well.

Complainant has proved this element.

## DECISION

Having established all three elements required under the ICANN Policy, the Panel concludes that relief shall be **GRANTED**.

Accordingly, it is **ORDERED** that the <rufino.com> domain name be **TRANSFERRED** from Respondent to Complainant.

_____

Hon. Karl V. Fink (Ret). (Chair); Sandra J. Franklin
and Houston Putnam Lowry, Chartered Arbitrator, as Panelists.

*Karl V. Fink*

Hon. Karl V. Fink (Ret.) for the Panel
Dated: July 20, 2017