UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| STANLEY PACE, an individual | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 4:17-cv-00518 |
| | : | |
| CONSTELLATION BRANDS, INC., | : | |
| a Delaware Corporation, and its wholly | : | |
| owned subsidiary RUFFINO S.r.L. | : | |
| | : | |
| Defendant. | : | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS
TO ORDER AND REPORT AND RECOMMENDATION**

**NOW COME** Constellation Brands, Inc. ("CBI") and Ruffino S.r.L. ("Ruffino") (collectively "Applicants") and file their *Response to Plaintiff's Objections to Order and Report and Recommendation* ("Response").

**I.    BACKGROUND AND PRELIMINARY STATEMENT**

1.    Applicants filed their *Application for Temporary Restraining Order and Preliminary Injunction* ("Application") (Dkt. 18) on November 3, 2017. On December 7, 2017, the parties presented before the Honorable Kimberly C. Priest Johnson for argument on the *Application*. It was confirmed during briefing and argument on the *Application* that Stanley Pace ("Pace") has and will continue to attempt to sell the domain name "rufino.com" ("Infringing Domain"). After review of the evidence submitted and arguments of counsel, on December 13, 2017, Magistrate Priest Johnson issued the *Order and Report and Recommendation of United States Magistrate Judge* (Dkt. 34) ("Magistrate's Report"). On December 28, 2017, Pace filed his *Objections to Order and Report and Recommendation* (Dkt. 36) ("Objection"), but failed to state any legitimate basis for which this Honorable Court should not adopt the *Magistrate's Report* and grant the *Application.* The *Magistrate's Report* properly concluded that the

*Application* should be granted, the relief sought by Applicants is proper, and Pace failed to rebut the same. In short, Pace has 1) waived objections under 28 U.S.C. § 636(b)(1)(C) by failing to object to the vast majority of claims set forth by Applicants; 2) the *Magistrate's Report* applied the correct standard of review and made express findings; 3) Pace did not establish evidence of the fair use defense under the ACPA; and 4) the *Magistrate's Report* properly concluded that Applicants demonstrated a substantial threat of irreparable harm.

## II. PACE FAILED TO OBJECT TO ANY OF APPLICANTS' CLAIMS OTHER THAN ACPA CLAIMS

2. As clearly set forth in Applicants' *Counterclaim* (Dkt. 10), Applicants set forth six (6) separate and distinct state and federal trademark causes of action.[1] Specifically, Applicants set forth claims under 11 U.S.C. § 1114, 15 U.S.C. § 1125(a), 15 U.S.C. § 1125(c), 15 U.S.C. § 1125(d), Tex. Bus. & Comm. Code § 16.102, and Tex. Bus. & Comm. Code § 16.103 (collectively "Claims"). *Id.* Pace has only articulated an argument that the *Magistrate's Report* failed to address the safe harbor provision of the Anticybersquatting Consumer Protect Act ("ACPA") under Section 1125(d) of the Lanham Act.[2] Obviously, the safe harbor only pertains to the ACPA, not Applicants' other five (5) causes of action. As a result, pursuant to 28 U.S.C. § 636(b)(1)(C), Pace has waived any objection to the validity of Applicants' other Claims that support the findings in favor of injunctive relief. Each and every element of the Claims was supported by the evidence submitted by Applicants including evidence submitted by and through the *Declaration of Sandro Sartor* (Dkt. 18-3).[3] Applicants, therefore, request that this Honorable Court confirm the findings set forth in the *Magistrate's Report* and issue the relief requested in the *Application.*

---

[1] Dkt. 10 at 9-14.
[2] Dkt. 36 at 2-3.
[3] For the first time in the *Objection*, Pace argues that the *Declaration of Sandro Sartor* is "self-serving and conclusory." Dkt. 36 at 4. However, none of the facts or evidence submitted in the *Declaration of Sandro Sartor* was ever objected to, refuted, or disputed by Pace. Dkt. 18-3.

### III.  THE MAGISTRATE'S REPORT APPLIES THE CORRECT STANDARD OF REVIEW AND MAKES EXPRESS FINDINGS

3.  "A plaintiff seeking a preliminary injunction must show: 1) a substantial likelihood of success on the merits; 2) a substantial threat that plaintiff will suffer irreparable harm if the injunction is not granted; 3) the threatened injury outweighs any damage that the injunction might cause the defendant; and 4) the injunction will not disserve the public interest."[4] The decision to grant a preliminary injunction lies within the sound discretion of the district court.[5] An abuse of discretion occurs when a court "(1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts."[6] Findings of fact are reviewed only for clear error; legal conclusions are subject to *de novo* review.[7] "As with injunctive relief generally, an equitable remedy for trademark infringement should be no broader than necessary to prevent the deception."[8]

4.  The *Magistrate's Report* applies the correct standard of review. In his *Objection*, Pace argued that the *Magistrate's Report* failed to make express findings.[9] Quite to the contrary, for example, the *Magistrate's Report* clearly finds as follows:

> At the December 7, 2017, hearing, [Pace's] counsel admitted that [Pace] had attempted to sell "rufino.com" since the NAF Decision, and that [Pace] intended to continue his attempts to sell the domain name during the pendency of this action…. [I]f [Pace] was successful in selling the "rufino.com" domain name during the pendency of this case, any decision declaring [Applicants] as the rightful owners of "rufino.com" and ordering [Pace] to submit a full and final transfer would be meaningless.
>
> …
>
> At the December 7, 2017, hearing, [Pace] argued that, if the requested injunctive relief is granted, he will be deprived of potential profit in selling "rufino.com." [Pace] conceded, however, that since the NAF Decision ordered transfer of "rufino.com" to [Applicants], [Pace] cannot "transfer" the domain name; however, [Pace] argued he should still be allowed to "sell" the domain name despite the NAF Decision and the pending case before the Court. In other words, [Pace] argued that, if the requested injunctive relief is granted,

---

[4] *Dickey's Barbecue Pit, Inc. v. Celebrated Affairs Catering, Inc.*, 2017 WL 10794231, at *2 (E.D. Tex. Mar. 22, 2017)(Mazzant, J.)(citing *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008)).
[5] *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).
[6] *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003).
[7] *Paulsson Geophysical Services, v. Sigmar*, 529 F.3d 303, 306 (5th Cir. 2008).
[8] *Westchester Media, LLC v. PRL USA Holdings, Inc.*, 214 F.3d 658, 674 (5th Cir. 2000).
[9] Dkt. 36 at 3-4.

he will lose potential profit in selling a domain name he acknowledges he cannot currently transfer. The Court finds this hardship of lost potential profit to [Pace] negligible in comparison to [Applicants'] potential injury if the status quo is not maintained.[10]

The *Magistrate's Report* properly sets forth "reasonable detail[s]" as required by Rule 65(d) of the Federal Rules of Evidence and issued a narrowly tailored preliminary injunction. Applicants, therefore, request that this Honorable Court confirm the findings set forth in the *Magistrate's Report* and issue the relief requested in the *Application.*

### IV.  PACE DID NOT ESTABLISH EVIDENCE OF THE FAIR USE DEFENSE UNDER THE ACPA

5.  Several courts have departed from a strict adherence to the statutory indicia under the ACPA and have relied expressly on a more case-specific approach to bad faith.[11] As a part of the analysis, courts look to a defendant's whole course of conduct, including conduct during ACPA litigation.[12] The factors are given to courts as a guide, not as a substitute for careful thinking about whether the conduct at issue is motivated by a bad faith intent to profit.[13]

6.  "Cybersquatting is the Internet version of a land grab. Cybersquatters register well-known brand names as Internet domain names in order to force the rightful owners of the marks to pay for the right to engage in electronic commerce under their own name."[14] Registering "well-known marks to prey on consumer confusion by misusing the domain name to divert customers from the mark owner's site to the cybersquatter's own site," and targeting "distinctive marks to defraud consumers" constitutes bad

---

[10] Dkt. 34 at 5 & 6.
[11] *Sporty's Farm, LLC v. Sportsman's Mkt., Inc.,* 202 F.3d 489, 493 (2d Cir. 2000)(stating "[t]he most important grounds for our holding that Sporty's Farm acted with a bad faith intent…are the *unique circumstances of this case*, which do not fit neatly into the specific factors enumerated by Congress but may nevertheless be considered under the statute.")(emphasis added); *see also Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 436 (4th Cir. 2011)(refusing to apply a "formalistic approach" to application of the enumerated factors and not that doing so could "undermine the purpose of the ACPA, which seeks to prevent the bad faith and abusive registration of distinctive marks as Internet domain names with the intent to profit from the good will associated with such marks.").
[12] *See, e.g., Storey v. Cello Holdings, LLC*, 347 F.3d 370, 385 (2d Cir. 2003)(stating "Congress intended the cybersquatting statute to make rights to a domain-name registration contingent on ongoing conduct rather than to make them fixed at the time of registration.").
[13] *Isystems v. Spark Networks*, 2012 U.S. App. LEXIS 6197 n. 16 (5th Cir. 2012).
[14] *Interstellar Starship Services, Ltd. v. Epix, Inc.*, 304 F.3d 936, 946 (9th Cir. 2002).

faith.[15] Registration of domain names that constitute slight variations of a registered mark, including domain names that differ by one or two characters, often satisfies the requirement of confusing similarity.[16] Typosquatting is the use of a domain name that constitutes a typo or intentional misspelling of distinctive or famous names.[17] The Fifth Circuit has expressly held that the ACPA covers typosquatting.[18] "A defendant who acts even partially in bad faith in registering a domain name is not, as a matter of law, entitled to benefit from [ACPA's] safe harbor provision." [19]

7.      Nearly the entire basis of Pace's argument is predicated on *Southern Co. v. Dauben, Inc.*, which is much different both factually and legally to the present case. In such case, there was no evidence that the defendant attempted to sell the domain at issue. Here, however, Pace attempted to sell the Infringing Domain for $94,000.00 approximately three (3) months after filing this suit and six (6) months after the UDRP arbitration decision.[20] Despite arguing extensively that he could not transfer the Infringing Domain, Pace attempted to sell the Infringing Domain and profit from such sale. Without injunctive relief, nothing prohibits Pace from 1) reinstating Sedo.com, LLC's services to sell the Infringing Domain, 2) engaging another service to monetize the Infringing Domain, 3) privately selling the Infringing Domain, and/or 4) licensing the Infringing Domain for email use. In addition to other evidence establishing Pace's bad faith actions and intent to sell the Infringing Domain, the *Declaration of Sandro Sartor* (Dkt 18-3) clearly establishes Pace's bad faith acts of typosquatting and Pace's common trend of attempting to profit from a senior mark user's goodwill and brand recognition.[21]

---

[15] *TMI, Inc. v. Maxwell*, 368 F.3d 433, 439 (5th Cir. 2004).
[16] *Gioconda Law Group, PLLC v. Kenzie*, 941 F. Supp. 2d 424, 430 n. 6 (S.D.N.Y. 2012).
[17] *Tex. Int'l Prop. Assocs. v. Hoerbiger Holding AG*, 624 F. Supp. 2d 582, 587 (N.D. Tex. 2009); *see also* Dkt. 18-3 at ¶¶2-7.
[18] *S. Co. v. Dauben, Inc.*, 324 F. App.'x 309, 312 n. 2 (5th Cir. 2009).
[19] *Virtual Works, Inc. v. Volkswagen of Am., Inc.,* 238 F.3d 264, 270 (4th Cir. 2001); *see also Audi AG v. D'Amato,* 469 F.3d 534, 550 (6th Cir. 2006)(stating without an injunction "Audi would be irreparably harmed by consumers on [defendant's] site purchasing counterfeit items, instead of those that were lawfully sold by Audi.").
[20] Dkt. 18-2; Dkt. 18-3 Ex. A; Dkt. 26-1.
[21] Dkt. 18-3 at ¶¶6-14. "[W]hen the senior user's trademark is famous in the marketplace and where the junior user was aware of the trademark and of its fame, a presumption of bad faith arises from the choice of the same name because it is inferable that the junior user adopted the mark for the purpose of profiting from the aura of goodwill surrounding the senior user's mark." *E. & J. Winery v. Spider Webs, Ltd.*, 286 F.3d 270, 276 (5th Cir. 2002)(citing *E. & J. Winery v. Gallo Cattle Co.*, 1989 U.S. Dist. LEXIS 7950 (E.D. Cal. 1989)). "[I]t was appropriate for the trial court to prevent [the Defendant] from registering or using an internet domain name containing the words 'Gallo' or 'Ernest' and 'Julio' in

8.    This matter is much more akin to *Tex. Int'l Prop. Assocs. v. Hoerbiger Holding AG.* In such case, like Pace, the defendant argued that the infringing domain name refers to a surname and, thus, registration was not made in bad faith. The Court found such an argument to be "disingenuous" based on the cybersquatter's use of the infringing domain name to divert web traffic.[22] Here, in the *Declaration of Sandro Sartor*, Mr. Sartor detailed that Pace used the Infringing Domain to divert web traffic from "ruffino.com" to the Infringing Domain.[23] Similarly, the *UDRP Decision* (Dkt. 18-2),[24] indicated that Pace used a "standard click-through technique" that directed consumers to "Sponsored Listings" for wineries and wine retailers.[25] These actions clearly constitute bad faith. Additionally, despite arguing that the Infringing Domain references a surname, Pace failed to set forth any relevant or admissible evidence to show that the Infringing Domain is protected under the fair use exception set forth in the ACPA. In Applicants' *Reply in Support of Application for Temporary Restraining Order and Preliminary Injunction* (Dkt. 26), Applicants set forth objections to the website printouts offered by Pace and, thus, such printouts are not evidence.[26] The website printouts offered by Pace make reference to matters outside of the United States and do not address the effect such arguments would have on consumers in the United States or even that consumers in the United States are aware of the same. Applicants, therefore, request that this Honorable Court confirm the findings set forth in the *Magistrate's Report* and issue the relief requested in the *Application.*

---

combination, and we affirm the trial court's injunction as issued." *Id.* (confirming an injunction that prohibited the unauthorized use and cybersquatting on the plaintiff's trademark).
[22] *Tex. Int'l Prop. Assocs. v. Hoerbiger Holding AG*, 624 F. Supp. 2d 582, 589 (N.D. Tex. 2009)(concluding the "fair use" defense does not prevent a finding of bad faith).
[23] Dkt. 18-3 at ¶¶ 6, 8-11.
[24] A court's reference to a UDRP panel arbitration decision is not error. *S. Co. v. Dauben, Inc.¸* 324 F. App.'x 309, 316 (5th Cir. 2009).
[25] Dkt. 18-2 at 8.
[26] Dkt. 26 at ¶¶ 23-24; *see also* Fed. R. Evid. 801-803, 805, 901; *Alanis v. Tracer Indus. Mgmt. Co.*, 2016 U.S. Dist. LEXIS 110400 *24-25 (E.D. Tex. Aug. 18, 2016)(Crone, J.)(concluding photos from a local newspaper website are inadmissible hearsay); *Versata Software, Inc. v. Internet Brands, Inc.*, 2012 U.S. Dist. LEXIS 92920 *12-28 (E.D. Tex. July 5, 2012) (Bryson, J.)(concluding email is inadmissible hearsay).

## V. THE MAGISTRATE'S REPORT PROPERLY CONCLUDED THAT APPLICANTS DEMONSTRATED A SUBSTANTIAL THREAT OF IRREPARABLE HARM

9. The Fifth Circuit has concluded that "where a district court has determined that a meaningful decision on the merits would be impossible without an injunction, the district court may maintain the status quo and issue a preliminary injunction…."[27] A harm is irreparable where there is no adequate remedy at law.[28] "Federal courts have long recognized that, when the threatened harm is more than de minimis, it is not so much the magnitude but the irreparability that counts for purposes of a preliminary injunction…. [A]n injury is irreparable only if it cannot be undone through monetary remedies…. The absence of an available remedy by which the movant can later recover monetary damages…may…be sufficient to show irreparable injury.[29] "When a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods or services constitutes an immediate and irreparable injury, regardless of the actual quality of those goods or services."[30]

10. The *Magistrate's Report* states that Applicants detailed the "misuse of the [Infringing Domain] has caused and would continue to cause irreparable harm in the form of disruption of [Applicants'] business, loss of customer good will, and brand confusion" and, thus, dilutes[31] Applicants' brand.[32] "In order to have success on a dilution claim," a plaintiff need only "show that it owns a distinctive mark and that there is a likelihood dilution."[33] "Because dilution gradually '*whittles away*' a mark's uniqueness and distinctive selling power, its harm accrues over time. The longer the defendant uses the diluting mark, the more time the public has to associate the plaintiff's mark with another's goods or service. Accordingly, the Court finds that [plaintiff] has *a threat it will suffer irreparable injury*

---

[27] *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011).
[28] *See Deerfield Med. Ctr. V. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981); *Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir. 1975); *see also Kiva Kitchen & Bath, Inc. v. Capital Distrib., Inc.*, 319 Fed. App'x 316, 321 (5th Cir. 2009)(stating a court can award transfer of an infringing domain name and statutory damages).
[29] *Paulsson Geophysical Services, v. Sigmar*, 529 F.3d 303, 312 (5th Cir. 2008)(holding the district court did not clearly err in finding a substantial threat of irreparable injury).
[30] *Quantum Fitness Corp. v. Quantum Lifestyle Ctrs., LLC*, 83 F. Supp. 2d 810, 831 (S.D. Tex. 1999).
[31] 15 U.S.C. § 1125(c); *see also* Dkt. 10 at ¶¶25-27.
[32] Dkt. 34 at 5.
[33] *Cottonwood Fin. Ltd. v. Cash Store Fin. Servs.*, 778 F. Supp. 2d 726, 742 (N.D. Tex. 2011).

because any uses of [the marks] … constitute 'acts' that will likely dilute [the marks]."[34] Clearly, Applicants established that the Ruffino mark[35] is distinctive and Pace's actions of infringement[36] have diluted Applicants' brand.[37]

11. Pace has attempted to sell the Infringing Domain for $94,000.00 approximately three (3) months after filing this suit and six (6) months after the UDRP arbitration decision.[38] "[Pace's] counsel admitted that [Pace] had attempted to sell 'ruffino.com' since the NAF Decision, and that [Pace] intended to continue his attempts to sell the [Infringing Domain] during the pendency of this action."[39] The *Magistrate's Report* properly concluded that Applicants will suffer irreparable harm because "any decision declaring [Applicants] as the rightful owners of 'rufino.com' and ordering [Pace] to submit a full and final transfer would be meaningless" in light of Pace's actions to sell the Infringing Domain and desire to continue to do so while this action is pending.[40] Applicants, therefore, request that this Honorable Court confirm the findings set forth in the *Magistrate's Report* and issue the relief requested in the *Application*.

## VI. PRAYER

WHEREFORE, Applicants, CBI and Ruffino, pray for the reasons set forth herein, as supported by the *Counterclaim* (Dkt. 12) and declaration and exhibits to the *Application* (Dkt. 18), that this Honorable Court affirm the *Magistrate's Report* (Dkt. 34) and issue the injunctive relief requested in the

---

[34] *Id.* at 760 (emphasis added).
[35] The mark of a competitor in the wine industry, Ernest and Julio Gallo Winery, has been determined to take on "secondary meaning status." *E. & J. Winery v. Spider Webs, Ltd.*, 286 F.3d 270, 276 (5th Cir. 2002)(citing *E. & J. Winery v. Consorizo del Gallo Nero*, 782 F. Supp. 457, 462 (N.D. Cal. 1991))(stating Ernest and Julio Gallo Winery's registertated mark was thirty-eight (38) years old and is considered distinctive and famous); *see also* Dkt. 18-3 at ¶ 2 (stating Ruffino has owned the mark "RUFFINO" since 1951).
[36] Unauthorized use of a trademark to disseminate information contrary to the trademark holder's business constitutes imminent irreparable harm. *Jews for Jesus v. Brodsky*, 993 F. Supp. 282, 311-13 (D. N.J. 1998)(concluding potential damage to the reputation of the plaintiff constitutes irreparable harm).
[37] Dkt. 18-3 at ¶¶6-14; *see also People for Ethical Treatment of Animals v. Doughney*, 113 F. Supp. 2d 915, 919 (E.D. Va. 2000)(stating the Defendant "clearly intended to confuse, mislead and divert internet users into accessing his web site," which was harmful to "the goodwill represented by the PETA mark.").
[38] Dkt. 18-3 Ex. A; Dkt. 26-1.
[39] Dkt. 34 at 5.
[40] *Id.*

*Application* (Dkt. 18). Applicants further request such other and further relief, general or special, at law or in equity, to which Applicants may show themselves justly entitled.

        Respectfully submitted,

        BARLOW GARSEK & SIMON, L.L.P.
        920 Foch Street
        Fort Worth, TX 76107
        817.731.4500
        817.731.6200 – Facsimile

BY: */s/ Christian Dennie*
    Christian Dennie
    TX State Bar No. 24045775
    cdennie@bgsfirm.com
    Paul J. Vitanza
    TX State Bar No. 24028100
    pvitanza@bgsfirm.com

    BAKER AND RANNELLS, P.A.
    92 East Main Street, Ste. 302
    Somerville, NJ 08876
    908.722.5640
    908.725.7088 – Facsimile

BY: */s/ Stephen. L. Baker*
    Stephen L. Baker
    NY State Bar No. 1743236*
    s.baker@br-tmlaw.com

***ATTORNEYS FOR DEFENDANTS AND COUNTER-PLAINTIFFS***

**\***Admitted Pro Hac Vice

**CERTIFICATE OF SERVICE**

    I certify that on January 5, 2018, I electronically filed the foregoing *Response to Plaintiff's Objections to Order and Report and Recommendation* with the Clerk of the Court for the United States District Court, Eastern District of Texas, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record by electronic means.

        */s/ Christian Dennie*
        Christian Dennie